### MARSHALL v. BEASON et al.

(Court of Civil Appeals of Texas. Texarkana. Jan. 22, 1914. Rehearing Denied Feb. 5, 1914.)

1. SPECIFIC PERFORMANCE (§ 87*)—RIGHT TO.

Where the deed to land, which they had contracted to purchase, was rejected on account of alleged defects in the title, the purchasers cannot thereafter claim specific performance of the contract.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 225, 238–241; Dec. Dig. § 87.*]

2. SPECIFIC PERFORMANCE (§ 31*) — INCOMPLETE CONTRACT—WHAT CONSTITUTES.

Where defendants offered to purchase plaintiff's land, if the deed could be made so that they could pay $50 a year for five years, and then $500, and plaintiff in reply offered to lease the land for five years at $50 a year, with the understanding that at the expiration of five years it should be purchased for $500, and required two years' rent in advance, there was no enforceable contract; plaintiff's reply not being such an unqualified acceptance of defendants' offer as to create a contract, and her counter offer not having been accepted.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 86–88; Dec. Dig. § 31.*]

3. SPECIFIC PERFORMANCE (§ 31*) — INCOMPLETE CONTRACT—OFFER—ACCEPTANCE.

Where a landowner offered to sell his land at slightly different terms from those offered by the purchaser, the purchaser's mere mental intention to accept, without notice thereof to the vendor, cannot create a binding contract entitling him to specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 86–88; Dec. Dig. § 31.*]

4. TAXATION (§ 531*)—PAYMENT OF TAXES—RECOVERY.

Where defendants paid taxes on plaintiff's land without the authority of plaintiff, and without any contract for the purchase of the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

land, the defendants were mere volunteers, and cannot recover the payments made.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 986, 987; Dec. Dig. § 531.*]

5. APPEAL AND ERROR (§ 1175*)—DETERMINA-TION.

Where the evidence is practically without conflict, and all of the material facts are before the Court of Civil Appeals, that court will itself enter the judgment which should have been rendered below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Panola County; W. C. Buford, Judge.

Trespass to try title by Ella Marshall against C. L. and Dan Beason, who counterclaimed. From a judgment for defendants on their counterclaim, plaintiff appeals. Reversed and rendered.

Claiming to be the owner in fee simple, and under the ten-year statute of limitation, of 100 acres of the D. Blankenship survey in Panola county, the appellant brought an action in trespass to try title, and as well to remove cloud from the title against appellees. Appellees answered by denial and not guilty, and by cross-action pleaded a contract of lease and purchase of the land from appellant of date January 22, 1912, and asked specific performance of the same. Appellant answered the cross-action by denial and plea of mutual rescission of a former trade. It was agreed that appellant had title to the land, and the contest was over the allegations of the cross-action. The verdict of the jury was in favor of appellees, and a decree of specific performance of the contract of sale was entered.

It appears that in the month of November, 1911, the brother of appellant, purporting to act for appellant, contracted a sale of the land to appellees for $500 cash, "to be paid on presentation of substantial warranty deed." In accordance with the contract so made by her brother, the appellant, in November, 1911, forwarded a deed to the land by mail to the bank, with instructions to deliver it to appellees upon their paying the $500. Appellees, in consequence of legal advice against the title to the land, did not take the deed from the possession of the bank. Appellees admit in their evidence that the want of a good title ended the original trade of purchase. C. L. Beason, on January 3, 1912, in reply to a letter from her, wrote appellant expressing his intention to give up the original trade, but at the same time making the further offer to appellant in respect to the land that, "if the deed can be so made that I could pay you say $50.00 or $40.00 a year for five years, and then pay the $500.00, I would risk the title; but as it stands, with no bond for title, I would risk no cash, except as it might be made on the place." To this letter appellant, on January 22, 1912, replied as follows: "Please excuse my seeming negligence in waiting so long to reply to your letter. I have now decided to rent you the land for the five years at fifty dollars per year, with understanding at expiration of the five years you pay me five hundred cash for it. Yet, Mr. Beason, land, no doubt, would be worth more. But, now I do this, I want you to do me a favor. I went to big expense to send my brother there with understanding I would not sell for less than six hundred. He promised it to you for five hundred. Anyway, my collections have been slow on account of low price cotton, etc., and I need some money real bad right now in my millinery business, and it be great accommodation if you will pay me two years of the rents in advance, which then would be help to me, and you be in possession, and I assure you I not trouble you any more until my rents come round after expiration of the two years. I hope you can and will do this, at least, for, after I had made up my mind to sell, I wanted to sell, and I need money, and I hope you will now send me check right away for one hundred; will be help to me as now I need it." Appellees did not, they say, make any reply to this letter. And on February 10, 1912, appellant again wrote appellee C. L. Beason stating that she had been anxiously awaiting a reply to her letter of the 22d, and "I was surprised, and so was Brother, when you failed to come up to promise. It was only through Brother that I ever agreed to send deeds or sell place for five hundred dollars. He said he promised you, so I consider I am under no obligation to sell it for that now, unless you will, as I ask you to, pay me two years' rent in advance; then I will agree, as I said, to rent you place for five years, and sell it to you at expiration of five years for five hundred; otherwise I can't promise to sell it at that price now, but, as I have gone so far as to promise to rent you the land for five years, with two years' rent in advance, I will be as good as my word, and can't see why you have not replied to my letter. So please write or let me hear by 15th or 16th of this month what you are going to do." On March 25, 1912, appellee Beason replied to the letter, as far as is here material, as follows: "In reply to your recent letter, permit me to say that, if the proposition I made is not acceptable to you, you may refund the payment made, the taxes for last year, and pay me a very reasonable sum for my own time spent about the place, and I will give up possession to you. Be glad to, as the place would not cash $300 to-day. * * * When you refund me money I've been out, I'll give up possession of place. * * * Please let me hear from you by return mail." Appellant did not reply to this letter, but instructed her agent on the ground to secure a tenant for

the place, which the agent, as he says, did. Appellees were not notified by the appellant's agent, as they say, of appellant's refusal to further negotiate any trade until June, 1912. Appellees assumed to rent out the place in January. It further appears that on September 21, 1912, appellees forwarded exchange for $50; but same was at once refused and returned by appellant to appellees. Appellees made no other payment on the land to appellant except the tender in September, but on March 16, 1912, voluntarily paid the taxes for 1911 on the land. The evidence does not show that appellant authorized the payment of the taxes. This is the evidence in the record relied upon to show the alleged contract.

H. N. Nelson, of Carthage, for appellant. Brooke & Woolworth, of Carthage, for appellees.

LEVY, J. (after stating the fact as above). [1-3] In challenging the verdict of the jury and the decree of specific performance based thereon, the point made by the assignment is that there is failure of any proof, as a matter of law, of a completed and existing contract of lease and sale of the land in suit between the appellant and the appellees. If this point should be sustained, as we think it must be, it necessarily follows that appellant should have judgment for the title and possession of the land, for it was admitted that appellant had title and should recover, unless appellees established a right to specific performance. Refusing, as appellees did, to accept the deed to the land forwarded by appellant in November, 1911, and to perform the contract as made through the appellant's brother to pay $500 cash for the land, because of the adverse legal advice as to the character of title contracted for, such contract lost its legal force of enforcement by appellees, and they could not predicate a right of specific performance upon such original contract. And, further, appellees in their pleading do not rely upon the contract so made through the brother of appellant. While, however, it admittedly appears that appellees refused to perform and rejected the contract of sale of the land for cash made in behalf of appellant by her brother in November, 1911, it nevertheless further appears, and must be taken as a fact, that thereafter, on January 3, 1912, appellee C. L. Beason, by letter of that date, made a new and distinct offer to appellant in respect to the land. In the letter appellee plainly proposed to appellant to take the land and "risk the title" upon the terms that appellant would have "the deed" to the land "so made that I could pay you say $50.00 or $40.00 a year for five years, and then pay the $500.00." This proposal of appellee to appellant has through words used the elements of an offer to purchase the land outright at once on the terms of payment in the amount and at the time mentioned, and

there is no room in the words used for a different construction of the nature and terms of such offer. To this proposal of appellee. of purchase of the land on the terms stated, the appellant replied in her letter of January 22, 1912, in the words, "I have now decided to rent you the land for the five years at fifty dollars per year, with the understanding at. the expiration of the five years you pay me five hundred cash for it." The language of the reply so plainly expresses the intention and purpose of the appellant in respect to appellee's proposal in the letter of January 3d as to admit of no reasonable doubt to appellee that it was really a rejection of his proposal of purchase outright of the land, and was a counter proposal of lease and sale of the land. And appellant's letter of February 10th emphasizes her purpose and intention of rejection of the appellee's proposal as made. While it is true that the amounts and time for the payment of the same proposed by appellee were accepted and used by appellant in her counter proposal, yet the same, it is evident, was merely the basis acceptable to her for a counter proposal for a lease first, and then a sale of the land to appellees after the expiration of the five-year lease. If the appellees construed the letter of appellant to C. L. Beason as accepting his very offer of January 3d, they clearly misapprehended the letter and its legal effect. Since the proposal of appellee was of purchase outright, and did not contain an offer to rent the land, and then purchase in five years afterwards, and the reply of appellant to the proposal expressly contained and insisted upon the terms of rental for five years first, and then sale for $500 cash after the expiration of the five years, it is manifest that the reply of appellant did not correspond to the terms proposed by appellee. The term for rental of the land became and was a material term of the counter proposal of appellant, and formed a new and variant term from the terms proposed by appellee. It is quite elementary that, unless the acceptance corresponds to the offer, there is a lack of mutuality in agreement between the parties. And it appears, as an admitted fact by appellees, that no reply was made by them to appellant's counter proposal of her letter of January 22d. It is an elementary principle of law that, unless an agreement is reached by some form of offer on one side, and accepted on the other, it is not a contract resulting in obligation and enforceable at law. It is not doubted that, had appellees replied in acceptance of the appellant's counter proposal, the case would present a very different aspect, for appellant's proposal was so complete that upon acceptance by appellees an agreement would have been formed which contained all the terms necessary to determine a contract. And if the counter proposal of appellant should be construed as intended merely to open negotiations which

would ultimately result in a contract, such proposal of appellant called for an acceptance by appellees before they could legally assert a contract to have been formed between them and appellant. And until acceptance the counter proposal of appellant is not an agreement, and no rights either in the property or against appellant can come into existence. A mere mental intention to accept, not followed by notice to appellant, which was the situation in this record, does not have the legal effect of converting the counter proposal of appellant into a contract. And it is made conclusive by the letter of March 25th, written by appellee C. L. Beason in reply to appellant's letter of February 22d, that appellee rejected and would not accept the counter proposal of appellant, if force be given, as it must be, to the statement in the letter that, "if the proposition I made you is not acceptable to you, you may refund the payment made, the taxes for last year, and pay me a very reasonable sum for my own time spent about the place, and I will give up possession to you." It is conclusive that appellant accepted this letter as final and ending the negotiations, for she instructed her agent, Mr. Knight, to find a tenant and rent the land out. And appellees admit that they knew her intentions in the matter in June following. It does not appear that appellees had made any payment to appellant for her to refund as indicated in the letter.

[4] There appears the evidence that appellees, in September, and after notice that appellant had acted on C. L. Beason's letter of March 25th, tendered appellant $50 in exchange, which was immediately refused and returned by appellant to appellees. It does appear that on March 16th appellees paid the taxes for the year 1911 on the land. But the payment of the taxes was not made by any authority of appellant, and while the appellees had no legal claim or contract in respect to the land. Therefore the appellees in respect to the payment of the taxes stood in the position of a mere volunteer, and as a consequence cannot legally predicate a right of recovery against appellant for the taxes.

[5] The facts failing to establish the contract alleged by appellees, the judgment is reversed, and, as the material facts are without dispute, and present a question of law, no reason exists for remanding the cause; and judgment is therefore here rendered for appellant for the title and possession of the land, and for costs of the district court and of this appeal.